UNITED STATES, Appellee

v.

JOSE LOPEZ-MALAVE, Private E–2, U. S. Army, Appellant

4 USCMA 341, 15 CMR 341

No. 4202

Decided May 21, 1954

Lt Col Herman P. Goebel, Jr., U. S. Army, and 1st Lt Ivan E. Barris, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, 1st Lt Roderick V. Brown, U. S. Army, and 1st Lt Elliott H. Eisman, U. S. Army, for Appellee.

### Opinion of the Court

George W. Latimer, Judge:

A general court-martial in Korea tried the accused under charges specifying failure to obey a lawful order, leaving a sentinel post before being relieved, and assault with a dangerous weapon, in violation of the Uniform Code of Military Justice, Articles 92, 113, and 128, 50 USC §§ 686, 707, and 722, respectively. He was found guilty as charged and sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for two years. Intermediate appellate agencies affirmed the findings and sentence and we granted accused's petition for review. Because of the nature of the issue with which we are here concerned, a review of the facts which substantiate the findings is unnecessary. Suffice it to say

that the evidence is sufficient to support the findings of guilty of the offenses charged.

Before pleading, the defense made a motion that the charges be dismissed on the grounds that the ▮▮▮▮▮ ▮ accused could not intelligently conduct or cooperate in his own defense. In support of this motion a defense exhibit was introduced and received in evidence. This exhibit was a written stipulation as to the testimony of a duly qualified psychiatrist, and it is as follows:

" '. . . Between 19 April 1953 and 21 April 1953 I had occasion to examine Private Jose Lopez-Malave, US 50113279, Company A, 279th Infantry Regiment, and in my professional opinion found him to be suffering from an amnesia, though otherwise normal. The amnesia which this soldier manifests is a true amnesia and is due to hysteria which developed after the time of the alleged offenses and which therefore does not indicate inability to distinguish right from wrong or to adhere to the right with respect to the acts charged. The amnesia extends not only to the period of time in which the incidents alleged in the charges and specifications occurred, but also to almost anything that had occurred in the past. The amnesia does not indicate that the accused would be unable to understand the nature of the proceedings against him, nor unable to cooperate with his counsel in such proceedings except for the limitation that his amnesia as to the events occurring in his past would impose. It is felt that the amnesia is an isolated symptom and is not due to general psychiatric disease.

" 'It is my opinion that:

" 'a. The accused was at the time of the alleged offenses so far free from mental disease, defects, or derangement as to be able concerning the particular acts charged to distinguish right from wrong.

" 'b. The accused was at the time of the alleged offenses so far free from mental disease, defects, or derangement as to be able concerning the particular acts charged to adhere to the right.

" 'c. The accused does possess sufficient mental capacity to understand the nature of the proceedings against him and does possess sufficient mental capacity to intelligently conduct or cooperate in his own defense within the limitations imposed by his amnesia.' "

It is to be noted the stipulation states that, in the opinion of the psychiatrist, the accused was, at the time of the alleged offenses, able to distinguish right from wrong, and to adhere to the right. There being no other evidence of insanity at the time the offense was committed, a consideration of that issue on the guilt or innocence of the accused was not required. It is to be further noted that the psychiatrist concluded that the accused possessed sufficient mental capacity to understand the nature of the proceedings against him and to conduct and cooperate intelligently in his own defense within the limitations imposed by his amnesia.

The law officer denied the motion to dismiss subject to the objection of any member of the court. No objection was made, and a plea of not guilty was entered for the accused since he refused to plead. The case proceeded to trial and prosecution placed in evidence sufficient facts to support the findings of guilt. The accused did not testify and submitted no defense on the merits. At the conclusion of the trial, after arguments by counsel, the law officer included the following in his instructions to the court:

"The court is further advised that no person may be tried by court-martial unless he possesses such mental capabilities to understand the nature of the proceedings against him and to conduct intelligently in his defense [sic]. As I previously advised you, the accused is presumed initially to be sane. If in the light of all evidence, including that supplied by the presumption of sanity, a reasonable doubt exists as to the mental capacity of the accused to understand the nature of the proceedings against him and to conduct or cooperate in-

**343**

telligently in his defense, the court should find the accused not guilty. If however, the court is satisfied beyond a reasonable doubt that the accused has sufficient mental capacity to understand the nature of the proceedings against him and conduct or cooperate intelligently in his defense, this may be considered by the court in connection with all the other necessary elements of the offense in arriving at its findings."

We have recently had occasion to consider and rule on the legal effect of amnesia as it affects the guilt or innocence of an accused. In United States v. Olvera, 4 USCMA 134, 15 CMR 134, we discussed its several variations as defined by Psychiatry in Military Law, TM 8–240, paragraph 12*b*, and Davidson, Forensic Psychiatry, pages 15–17. In that case, we directed our principal discussion to the effect of an amnesic condition upon the accused's intent to commit the acts charged, and whether the presence of a state of amnesia would free him from criminal liability. However, we anticipated the problem which now confronts us, which is, the right or duty of a court-martial to try an accused who, at the time of trial, is suffering from amnesia and consequently cannot remember the occurrences for which he is being prosecuted.

The Manual provides that no person should be brought to trial who does not possess sufficient mental capacity to understand the nature of the proceedings against him and to conduct or cooperate intelligently in his defense. Paragraph 120*c*, Manual for Courts-Martial, United States, 1951. Psychiatry in Military Law, paragraph 8, reiterates the principle in the following language:

"In addition to the legal standard of mental responsibility at the time of the alleged offense, another and a different legal standard is established to determine whether the mental condition of accused at time of trial is such that he may be tried by court martial. It must appear beyond a reasonable doubt that the accused possesses sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his defense."

Laying aside, for the moment, our discussion of the principal question, we turn first to a consideration of the procedure by which the issue was resolved at the trial. This for the reason that there seems to be a misunderstanding on the part of military lawyers as to the proper method to be employed in disposing of this issue when raised as an interlocutory question. The Manual prescribes generally the procedure, which was not followed, and this case aptly portrays how a failure to discriminate between interlocutory questions and issues touching on the ultimate findings might confuse members of the court-martial. At the commencement of the trial, defense counsel made a motion to dismiss. If the accused was sane at the time he committed the offense, this is not an acceptable motion as he is not entitled to have his case dismissed by a court-martial. If at the time of trial he is unable to participate properly in his defense, the most he is entitled to is a continuance until the mental deficiency can be treated and corrected, if that is reasonably possible. If it is established that the condition is permanent, then appropriate authorities might dismiss the prosecution but that type of administrative proceeding should not be mingled with a trial on the merits. The former requires consideration by a convening authority, while the latter is the responsibility of the court-martial. We believe that, under the facts of this case, defending counsel should have made a motion for a continuance unless he was prepared to show a permanent state of mental derangement. Certainly on the evidence, the law officer should have treated the motion as being no more than one of that nature. Had he done that the procedure would have followed along these lines. Article 51(*b*) of the Code, 50 USC § 626, provides:

"The law officer of a general court-martial and the president of a special court-martial shall rule upon interlocutory questions, other than

challenge, arising during the proceedings. Any such ruling made by the law officer of a general court-martial upon any interlocutory question other than a motion for a finding of not guilty, or the question of accused's sanity, shall be final and shall constitute the ruling of the court; but the law officer may change any such ruling at any time during the trial. Unless such ruling be final, if any member objects thereto, the court shall be cleared and closed and the question decided by a vote as provided in article 52, viva voce, beginning with the junior in rank."

In line with that requirement of the Code, when the motion was presented, the law officer should have weighed the evidence and made a determination as to accused's capacity to cooperate in his defense subject to objection by any member of the court. The law officer ruled on the motion but we are certain he did so under the impression that the issue would be before the court-martial on final submission. Had an objection been raised, then the court-martial should have been instructed on the issue and an interlocutory finding recorded. If the court-martial determined the accused sane, then the Government could proceed with the trial and regular trial tactics and procedure would be in order. If the court-martial found the accused unable to participate in his defense, then the record should be forwarded to the convening authority for further proceedings. Paragraph 122b of the Manual so provides and then it further states:

"If the convening authority disagrees with the court in its finding that the accused lacks requisite mental capacity at the time of trial (120c), or if the convening authority determines that the disability was temporary and that the accused has recovered his mental capacity, he may return the case to the court with instructions to reconsider its findings and, if appropriate, to proceed with the trial."

By failing to separate the questions of sanity at the time of the offense and inability to assist in his defense, the law officer found himself in this dilemma. He permitted a trial to be completed without a finding that the accused was mentally capable to assist in his own defense. Had the court-martial found a mental block existing at that time, all proceedings would have been a useless waste of time. But, more than that, the law officer's instructions became a collection of misadvice. Without any evidence that the accused was insane at the time the offense was committed, the instructions told the court-martial members that unless they found beyond a reasonable doubt that the accused had sufficient mental capacity on the day of trial to understand the nature of the proceedings against him, the court should find him not guilty. Under those instructions, and at that time, what should have been no more than a delaying action became an avenue to freedom. While the board of review recognized the difficulties posed by the procedure followed and suggested there was a better method, it was of the opinion that the procedure used was within the discretion of the law officer. We are not willing to be that liberal. The Manual prescribes generally the procedure we herein outline and it should be followed. While in this instance the error was not prejudicial to either party, the procedure used is fraught with probabilities of confusion and it should not be adopted in the future.

The final question involves the sufficiency of the evidence as to accused's capacity to assist in his defense. While the court-martial found the accused guilty, and normally there is implicit in that finding the additional finding that the accused was sane, we have some difficulty in knowing what the court-martial would have found had the issue been disposed of properly. Obviously, accused was sane when he committed the offense; but the testimony of the psychiatrist established that he was suffering from true amnesia induced by hysteria and that this condition would limit his capacity to cooperate intelligently in his defense. We find no evidence from expert or lay witnesses contradicting that testimony.

**345**

The accused did not take the stand and he made no pretrial statement which in any way suggests that he had a recollection of some of the events. Conceding that the members of the court-martial had an opportunity to observe the accused as he sat silent during the course of the trial, we are not prepared to find that that alone would offset the medical testimony. While recognized medical authorities suggest that the diagnosis of hysterical amnesia should not be based solely on loss of memory which covers the period of the crime but rather should be arrived at by considering the general life pattern of the individual, we have no reason to believe that the expert witness did not base his conclusions on a proper foundation. We must, therefore, assume the accused was a true amnesia victim and that at the time of trial he was laboring under some disorder.

In United States v. Olvera, supra, we discussed the clinical explanation of this type of amnesia in the following manner:

"The final amnesic category—that due to hysteria—may also be related to the phenomena of the instant case, on the assumption, of course, that the accused's claim of memory loss is genuine. In connection with hysteria, however, it has been pointed out that not infrequently amnesia is precipitated by the very commission of crime—and thus is to be regarded as in no sense symptomatic of a deranged mental state destructive of criminal responsibility. Psychiatry in Military Law, supra, paragraph 12b.

". . . The authors of the Army and Air Force Manual, supra, have this to say in paragraph 12c:

'Hysteria should be reflected in the total life pattern of the accused. A person who never had a hysterical fugue until he committed a crime usually is held accountable, since in most such cases the criminal act precipitated rather than followed the hysterical fugue . . . A diagnosis of hysteria should not be based solely on the alleged amnesia which covers the period of the crime. It should be based on sound clinical judgment, taking into consideration the general life pattern of the individual.'

"In this type of amnesia—and in the absence of a history of hysteria or related disturbed states—we find nothing which impairs criminal responsibility. This is true because the individual affected was at the time of the conduct in question able to distinguish right from wrong and to adhere to the right. His own recognition of guilt, and that alone, functioned to create the 'mental block'—that is, to establish the amnesia. In this context, the memory loss, if anything, supports the conclusion that the subject was wholly responsible for his actions in law—not the converse."

With those views in mind, the question which is now posed has to do with the method of proceeding when it has been determined that an hysterical amnesic condition interferes with an accused's capacity to remember the facts and circumstances surrounding the criminal occurrence. The question can be separated into two parts. First, assuming the condition is temporary and medical evidence shows the probability of an early recovery, then a continuance might be granted, if that form of relief is desired. No other remedy is demanded. Here there was no attempt to obtain a continuance as defense counsel sought to win all by relying on a motion to dismiss. That motion was denied and properly so. Second, if medical evidence establishes a fixed condition and a probability that the memory of past events cannot be restored reasonably by treatment, then there are countervailing factors which must be considered. On the one hand, and in line with the quoted authorities, it is generally recognized that hysterical amnesia succeeds the crime. In that event, if amnesia standing alone was a defense, a person would escape prosecution by the simple expedient of being unable to remember. He would be able to distinguish right from wrong and adhere to the right when the act was committed and would, therefore, be legally responsible for his criminal

act. But he would escape prosecution in many instances because the very heinousness of the crime would force a loss of memory. Carried one step further, if amnesia is not a defense, but can be seized upon as ground for a continuance, the same result would be effected because the accused would never regain his memory and continuances would go on ad infinitum. On the other hand, an accused might not be able genuinely to reenact his part in the offense and he would thus be deprived of the value of his testimony. Because of that inability, he would suffer some prejudice but, as we previously mentioned, we weighed those conflicting demands in the Olvera case, supra. In concluding to reject amnesia as a means of defeating prosecution, we there stated:

"That which we have ushered out the front door, it is now proposed we should return through the rear. Thus, it is intimated that loss of memory, while not affecting legal responsibility for crime, does indicate an inability to cooperate rationally in one's defense. See United States v. Galla, 1 CMR(AF) 77. Distinctly we do not propose to grant that effect to a claim of amnesia without more. If the condition were the product of alcohol or of hysteria, to conclude that it protects the accused from trial would be tantamount to a holding that amnesia negates criminal responsibility as an original proposition. And we cannot at all so hold. Moreover, we believe that the capacity to cooperate in one's own defense is a matter of inquiry directed to disorders existing at the time of trial. The accused may well be characterized by a genuine amnesia as to certain events, yet be able to deal rationally with them, to cooperate with his counsel, and to remember the events taking place at the trial. Since amnesia is not itself a disease but rather a symptom, in the imagined case all psychiatrists would be in accord in holding the accused to be completely rational, and wholly free from disorder as of the time of the trial. Yet under the suggested view, the court-martial could not proceed to trial because the accused had

not fully recovered his memory of events—and perhaps would never recover it.

"Concededly, such an accused is at some disadvantage—for, if innocent, he does not demonstrate that quality by testimony that he 'blacked out' and does not remember. However, he is still quite competent to assume the witness stand, and to assure the court that he does not remember—and he is certainly able to analyze rationally the probabilities of his having committed the offense in light of his own knowledge of his character and propensities. If his amnesia be rooted in some fundamental disorder existing at the date of the acts charged, he will also be able to raise the possibility that he was not mentally responsible at the time. This we conclude—after indulgence in a weighing process—affords him sufficient protection."

We apply that doctrine in this case. The record supports the conclusion that the accused was legally responsible for the offense. A continuance was not called for, and, under the facts with which we deal, the accused must win or lose on the motion made by him. Here he loses. At the time of trial, and supposedly now, he is rational and possesses no mental disorder other than loss of memory of events at the time of, and prior to, the offense. He is perfectly able to assist otherwise in his defense. He should not be permitted to escape punishment entirely, particularly where he relies on a disorder which is on the borderline between mental deficiency and malingering. In the final analysis, the deficiency is largely self-imposed. If in so holding we have imposed an obstacle in the way of a proper defense, it is one which we believe is demanded by the limitations confronting military courts and the armed services in the treatment of military offenders and mental diseases. Our test for dismissing a criminal prosecution for a mental deficiency, at the time of trial, will not be extended to those mental disorders arising out of alcoholism or hysteria which interfere only with a clear recollection of the

**347**

facts surrounding the offense or those antedating its occurrence. The right to a dismissal of the charges must grow out of a permanent mental disturbance at the time of the trial which, in good conscience, would require that legal proceedings be stayed and the action disposed of through administrative channels. If, and when, a mental condition arises subsequent to the commission of an offense which raises reasonably an accused's mental capacity to cooperate in his defense, that is, something more than one precipitated by desire to forget the horrid detail of his crime, the proceedings set forth in the Manual should be strictly complied with. In that connection, we are not speaking of a motion for continuance as that form of relief can be afforded an accused for any good reason. And we suppose that if a showing was made that a temporary mental disorder prevented an accused from assisting in his defense, he would be granted a postponement until such times as the deficiency was corrected.

Under our holding that the showing in this case does not bar the Government from proceeding, we are not disposed to return the record for further proceedings.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

QUINN, Chief Judge (concurring in the result):

I concur in the result.

In my separate opinion in United States v. Olvera, 4 USCMA 134, 15 CMR 134, I made it clear that I regard a condition of true amnesia, supported by competent testimony, as "reasonable cause" for an application for a continuance. However, the accused did not request a continuance in this case. He did not deny that he was legally sane both at the time of the commission of the offenses and at the time of the trial. His reliance upon the defense of amnesia was for the sole purpose of obtaining a dismissal of the charges. As pointed out in the Olvera case and here, amnesia, itself, is not sufficient to excuse an accused of liability for a criminal act. The accused here made no claim that amnesia impaired, or in any way prejudiced, his defense. Under the circumstances, I agree that the action of the board of review should be affirmed.