UNITED STATES, Appellee

v

JAMES H. DEAN, Specialist Third Class, U. S. Army, Appellant

7 USCMA 721, 23 CMR 185

722

No. 8637

Decided April 19, 1957

*First Lieutenant Bert M. Gross* argued the cause for Appellant, Accused. With him on the brief was *Major Edwin Doran.*

*First Lieutenant Peter J. Hughes* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Russell L. Brenneman, Jr.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This appeal brings up for review an important question of post-trial procedure. The accused was convicted of rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920, and sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for twenty years. However, the convening authority approved only findings of guilty of assault with intent to commit rape, in violation of Article 134, Uniform Code, 10 USC § 934, and reduced the period of confinement to two years. At the same time he suspended the execution of the discharge. A board of review set aside his action because he had referred to matter outside the record of trial. The board of review noted that the extra-hearing matter induced the convening authority to disapprove the findings of guilty of the offense charged, but "reinforce[d] the . . . evidence that accused was guilty" of the lesser offense. It directed that the convening authority withdraw his action and forward the case to a different court-martial authority for a new review.

On the second review, the Staff Judge Advocate reasoned that the new reviewing authority "should not approve findings or sentence more severe than those approved" by the original convening authority. His reasoning was rejected by the reviewing authority. Without stating his reasons in a separate letter, as required by paragraph 85, Manual for Courts-Martial, United States, 1951, he affirmed the court-martial's finding of rape. He also approved a sentence which did not provide for suspension of the discharge, and which included confinement at hard labor for five years. A board of review affirmed his action, but, in the exercise of its appellate power, reduced the confinement to two years. We granted review to consider whether the second action taken by the reviewing authority was legally correct.

Article 64 of the Uniform Code, 10 USC § 864, defines the power of the convening authority in reviewing a conviction. He can "approve only such findings of guilty, and the sentence . . . as he finds correct in law and fact and *as he in his discretion determines should be approved.*" (Emphasis sup-

**723**

plied.) In analyzing the limits of this grant of power, we must ■ distinguish between action approving a conviction and that which disapproves the results of the court-martial. As far as the former is concerned, the reviewing authority is not unrestrained. He cannot, for example, approve a conviction on the basis of evidence outside the record of trial, United States v Duffy, 3 USCMA 20, 11 CMR 20; nor can he approve the sentence on the basis of a predetermined and fixed policy. United States v Wise, 6 USCMA 472, 20 CMR 188. However, in disapproving a finding or ■ a sentence, the convening authority is not confined to the record of trial. Instead, he can properly consider ˙matter outside the record of proceedings in regard to the findings, United States v Massey, 5 USCMA 514, 18 CMR 138, and in connection with the sentence, United States v Lanford, 6 USCMA 371, 20 CMR 87. Whether in disapproving findings of guilty or a sentence, in ■ whole or in part, he exercises his discretion wisely or ineptly cannot be questioned by a subsequent reviewing authority. As we said in United States v McDaniel, 7 USCMA 56, 58, 21 CMR 182, subsequent reviewing authorities are "limited by the convening authority's action on the findings and the sentence." Earlier, in United States v Massey, supra, page 520, we had occasion to consider the Congressional hearings on the subject, and we pointed out that the draftsmen of the Uniform Code intended to confer upon the convening authority the right to disapprove the accused's conviction "for no reason at all."

Although the principle is different in several states, in the Federal criminal procedure, if an accused appeals his conviction and obtains an order of reversal and rehearing from the appellate tribunal, at the rehearing he is subject to trial and punishment upon the same basis as though the first trial had not been had. The reason for the rule is explained in Trono v United States, 199 US 521, 533–534, 50 L ed 292, 26 S Ct 121, as follows:

"In our opinion the better doctrine is that which does not limit the court or jury, upon a new trial, to a consideration of the question of guilt of the lower offense of which the accused was convicted on the first trial, but that the reversal of the judgment of conviction opens up the whole controversy, and acts upon the original judgment as if it had never been. The accused, by his own action, has obtained a reversal of the whole judgment, and we see no reason why he should not, upon a new trial, be proceeded against as if no trial had previously taken place.

". . . When, at his own request, he has obtained a new trial, he must take the burden with the benefit, and go back for a new trial of the whole case." [See also Green v United States, 236 F 2d 708 (CA DC Cir) (1956); cert granted 352 US 915, 1 L ed2d 122, 77 S Ct 217 (1956).]

In the absence of any jurisdictional issue (see United States v Bancroft, 3 USCMA 3, 11 CMR 3; United States v Padilla, 1 USCMA 603, 5 CMR 31) the Trono rule does not apply in the military. Under the Uniform Code a court-martial is expressly bound by the findings and the sentence of the first trial. Article 63 (b), Uniform Code of Military Justice, 10 USC § 863. In United States v King, 5 USCMA 3, 8, 17 ■ CMR 3, a majority of this Court held that the same restriction applies in regard to the convening authority's action. As we have already noted, the convening authority has absolute discretion in approving or disapproving findings of guilty by the court-martial and in modifying the adjudged sentence. His action, therefore, fixes the limits of both the findings of guilty and the sentence in all subsequent proceedings in the case. This holding is consonant with two general principles applicable to military criminal law.

First, Congress intended that the review of the convening authority's action by appellate bodies be for ■ the benefit of the accused. In United States v Zimmerman, 2 USCMA 12, 6 CMR 12, we referred to this intention as follows:

"In military judicial procedure automatic consideration by a board of review is provided. Uniform Code of Military Justice, Article 66; Manual for Courts-Martial, United States, 1951, paragraph 100. Since there is no provision for appeal to this intermediate tribunal by an accused, no notion of waiver, strictly speaking, is available to sustain 'prosecution appeals'—that is, certifications by a service Judge Advocate General. *However, action by a board of review is always taken on behalf of an accused and in his interest. Literally he can never be prejudiced by this appellate review*—for on retrial, if any, he cannot be tried for an offense greater than that charged at the first trial, nor can he receive a sentence greater than that adjudged at the first trial. . . . Since prejudice is impossible under this procedure, the evils contemplated by and even prompting the guaranty against double jeopardy are entirely inoperative. The provision for automatic review simply constitutes the device adopted by Congress for insuring that no man may stand convicted on an inadequate record." [Emphasis supplied.]

The second principle is that a well-settled administrative interpretation of an existing statute can be ▮▮▮▮▮▮ read into a re-enactment of that statute. See United States v Butts, 7 USCMA 472, 22 CMR 262. Article 63(b) of the Uniform Code, which limits the court-martial's authority on a rehearing, is phrased almost in identical language with Article of War 50-½ and Article of War 52, its predecessors. These latter statutes were interpreted by service boards of review for almost fifteen years before the enactment of the Uniform Code. Illustrative of their uniform holdings is United States v Jeffcoat, 78 BR 291. The board of review there said:

"A sentence announced by a court does not become final until the reviewing authority has acted thereon. When he has taken action the term of confinement imposed is fixed. Remission, under the quoted provision of the Manual, approves only the sentence as reduced. When the reviewing authority took appropriate action and then forwarded the case under Article of War 50-½ the only sentence acted upon by the Board of Review and The Judge Advocate General was the final sentence as approved and modified by the reviewing authority. The provisions of Article of War 50-½ and paragraph 87*b*, MCM, 1928, do not operate to confer upon the reviewing authority the power to order a rehearing in which a more severe sentence may be imposed. Forwarding the case for review under Article of War 50-½ is equivalent to publication and the sentence finally fixed by the reviewing authority may not, whatever course the proceedings thereafter take, be exceeded [citing authorities]."

All of us are agreed that the apparently increasing practice of ordering part of the record expunged ▮▮▮▮▮▮▮ is improper, and we strongly condemn it. In his separate opinion, Judge Latimer indicates that certain kinds of improper material can be ordered stricken from the record. Judge Ferguson inclines to the view that under no circumstances can there be physical deletion of any part of the record which is subject to appellate review. However, the approach which he and I take to this case makes it unnecessary to discuss the issue further. Unquestionably, the original convening authority's action is part of the proceedings subject to review by this Court. No one has denied or questioned the truth of the recitals in each of the two opinions by the board of review as to the contents of that action. We can accept these recitals as evidence of the initial action. In essence, they are no different from a description read into the record in place of a physical exhibit admitted in evidence. Accordingly, we need not defer our decision because of the absence of the document which the board of review had ordered removed from the record.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. In accord-

ance with our general practice of referring a case back to the level of proceedings at which the error occurred (United States v Clisson, 5 USCMA 277, 17 CMR 277), we return the record of trial to The Judge Advocate General for reference to another competent court-martial authority for proceedings consistent with this opinion.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

For reasons which will hereinafter appear, I do not concur with the result reached in this case or the ▮▮▮▮▮ reasons supporting the reversal. I take the view that the record should be restored to its proper state before we attempt to review the findings and sentence. I am convinced that the present state of the record denies the parties a legal and adequate review.

In United States v Papciak, 7 USCMA 412, 22 CMR 202, just recently decided, I called attention to the possibility that error might flow from a decision by the board of review which directs that certain official documents be expunged from the record. In my concurring opinion I stated:

". . . While this case does not go as far as some others I have seen, there has been a tendency on the part of boards of review to order staff judge advocate reports and actions of convening authorities to be withdrawn to prevent other authorities from noticing their contents. I doubt the power and authority of a board of review to order expunged from the record those entries which by statute are necessarily required to complete the proceedings. There may be occasions when matters may be ordered deleted if they are inflammatory, obscene, scandalous, in contempt of judicial forums, or fall in similar categories, but the mere commission of an error by one required to act does not justify stripping the record of evidence of the event. All appellate agencies are entitled to have all matters of record remain part of

the transcript on appeal, and the fact that a second convening authority may learn of the action of a previous reviewer does not authorize deletion of documents, orders, or other action sheets. It is presumed that subsequent reviewers will perform their duties properly and not be consciously influenced by prior errors. If the law were otherwise, then many judicial or quasi-judicial bodies would always be precluded from reconsidering their action merely because an error had been committed by them."

This case furnishes support for the announced earlier fear that we might be unable to consider errors allegedly committed by reviewing authorities if the record was stripped of essential entries. In considering the action to be taken here, the board of review undoubtedly concluded that the accused would be benefited very little, if at all, by its mandate unless a blindfold was placed over the eyes of the second staff judge advocate and his reviewing authority. The difficulty with the position taken is that the blind spot has never been eliminated, and any possibility of a proper review of part of the appellate proceedings at this level is thereby defeated. In addition, such a concept covertly suggests that the record must be mutilated because the officer selected by the board of review to cure an earlier error would disregard any instructions by it not to consider or be influenced by the prior review. Assuming that contingency poses some slight risk, it is one which must be taken, or a substantial part of the right to an appeal to this Court is impaired.

The first problem in the case at bar arose when the board of review issued what it designated as a preliminary opinion. The title is unimportant, but the gist of the decision seems to be the thought that the board of review was entitled to retain control of the case until the proceedings before the last reviewing authority were completed and returned, and only then would it be necessary to act on the findings and sentence. I do not subscribe to that principle because the action of the first reviewing authority was not void and the second officer exercising general

court-martial authority could not act unless the first action was set aside. The board of review did not expressly make that order, but that result is implicit in the decision.

The point of importance, however, revolves around the utter impossibility of this Court ascertaining the reason for, the logic of, or the prejudicial effect to the accused of, the action taken by the first reviewing authority. We are told by the board of review's preliminary decision that the first staff judge advocate to review the record used certain evidence outside the record to benefit the accused, and other evidence, also aliunde the record, to prejudice the accused. We are further informed that the first convening authority reduced the findings from rape to the lesser included offense of assault with intent to commit rape, that he reduced the confinement from twenty years to two years, and that he suspended the execution of the dishonorable discharge. But all the evidence to support those assertions has been deleted from the record. I am unable to ascertain what evidence or information was used by the staff judge advocate and the convening authority. Under the present posture of this case, the accused may have been prejudiced by the preliminary ruling of the board of review, yet he cannot support any argument to that effect because the record has been stripped of all supporting data. Furthermore, although it is asserted that the first convening authority suspended the execution of the dishonorable discharge, we are unable to ascertain whether it was merely for the purposes of appeal, which is largely provided for by statute, or whether it perhaps included a provision for remission as well. In short, what must be in the record for the ultimate protection of the accused has been deleted. One could hardly dispute the proposition that if the action of the convening authority is to bind all subsequent proceedings, his action, with its supporting data, cannot be tossed aside as if it had never happened. I would, therefore, set aside the finding and sentence, return the record to The Judge Advocate General of the Army for reference to the board of review,

direct the board to take the necessary steps to rehabilitate the record, and then have a proper review by a convening authority.

Because my associates have approached this problem with a belief that the merits of the controversy should be considered, I will set forth my views on the binding effect of the reduction of the findings and sentence by the first convening authority in his action.

In United States v King, 5 USCMA 3, 17 CMR 3, a majority of the Court offered the gratuitous advice that the maximum sentence imposable in the event of a rehearing was that in effect when the record reached this Court. The reasons for the restriction were not developed, but I assumed that the limitation was imposed because the convening authority had reduced the original sentence from ten years confinement to five years, with appropriate accessories, and the board of review had concluded that the punishment, as affirmed by the convening authority, was appropriate for the offense committed. At that time I noted my disagreement with the limitation, but did not state my reasons because the question was not properly before us. The same situation faces us in this instance, but if my views on the inadequacy of the record do not state the law of the Court, then the issue is relevant.

For the purposes of argument, I am willing to concede that the service cases decided prior to the Uniform Code of Military Justice promulgated the rule that the sentence as affirmed by the convening authority fixed the maximum punishment that could be imposed by the court-martial on rehearing. That concession necessarily forces me to consider the rule of statutory construction to the effect that prior administrative interpretations are entitled to consideration, in construing a statute, when we are seeking to ascertain the true intent of Congress. Now, that rule is rooted in the belief that Congress intended to incorporate the pre-existing decisions into the statute; and, if I were of that belief here, I would concur in the Court's opinion, but I find many

straws in the wind which indicate the Code was enacted to bring in a modern set of laws and cast away much of the old order. Personally, I prefer to break with the past and modernize military procedure where that is possible without doing violence to the Code. The early concept that the court-martial was an arm of the commander and subject to his every whim is obsolete and has been discredited by the Code, but it is the framework for the views advanced by my associates. Winthrop, in his Military Law and Precedents, 2d ed, 1920 Reprint, page 447, expressed the doctrine underlying what I believe to be the basis for the view that the original sentence includes affirmance by the convening authority:

"While the function of a court-martial is, regularly, completed in its arriving at a sentence or an acquittal, and reporting its perfected proceedings, its judgment, so far as concerns the *execution* of the same, is incomplete and inconclusive, being in the nature of a *recommendation* only. The record of the court is but the report and opinion of a body of officers, addressed to the superior who ordered them to make it, and such opinion remains without effect or result till reviewed and concurred in, or otherwise acted upon, by him. This superior, sometimes referred to as the Approving or Confirming Authority, but more commonly known in military parlance as the Reviewing Authority or Officer, is, as will presently be more fully indicated, the official—military commander or Commander-in-chief—by whom the court was originally constituted and convened, or—where there has been a change in the command since the convening—his successor therein."

Of course, if the above concept is accepted, the rule announced by the majority follows naturally, but if the reason underlying the concept is no longer sound or logical, the principle should be discarded. It is my conviction that Congress purposely moved away from the idea of indivisibility between the court and the commander and intended to divorce the convening authority from the court-martial. Under the present Code, his statutory duties place him in a compartment separate from the one occupied by the court-martial. Each is the sovereign in their respective fields, and little good will be gained from keeping them inextricably united on findings and sentence. True it is that no sentence can be executed until affirmed by the reviewing or convening authority, but others performing similar review functions must also affirm —if the sentence is of the required severity—and their action on the sentence most certainly should not revert back to, and become part of, the original sentence. If it is, then in all cases except when there is no original jurisdiction, any commutation, suspension, remission, or reduction by any reviewing authority becomes finally embedded in the case and must be honored in all subsequent proceedings, regardless of the ultimate disposition, and without regard to any error in the proceedings. That is a doctrine to which I do not subscribe, for there is a difference between the original sentence and the ultimate punishment, and an accused does not have an untouchable right to any clemency exercised by reviewing officers or agencies.

The framers of the Manual must have had some appreciation of the problem, for they framed their language so as to invoke different sentence limitations, depending upon whether the subsequent hearing is pursuant to an order for rehearing or one for a new trial. In fixing the maximum sentence to be adjudged on rehearing, Article 63 of the Code, 10 USC § 863, states, "no sentence in excess of or more severe than the original sentence may be imposed." The language of the Manual is identical, Manual for Courts-Martial, United States, 1951, paragraph 81$d$, page 132, but it is different on a motion for new trial. When that form of remedy is granted, paragraph 109$g$ (2), page 179, of the Manual provides, "no sentence in excess of or more severe than the original sentence as approved or affirmed shall be adjudged." It would thus appear that some thought was given to the content of the phrase "original sentence," and apparently the architects of the Manual concluded it did not in-

clude the action taken by the convening authority, for otherwise there would have been no reason for mentioning the later acts of affirmance or approval. If I had any doubt as to the thinking of the Manual draftsmen on the subject, I need only turn to the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 79, where they said, in speaking of rehearing:

"One provision that is new to all the forces is that which permits the trial counsel to advise the court of the sentence adjudged at the original trial. This advice is necessary since the court may not adjudge a sentence in excess of or more severe than that adjudged at the original hearings (Art. 63)."

I believe the interpretation made by the framers of the Manual is sound, and share it, and I therefore conclude that the term "original sentence" means the sentence adjudged by the court-martial, and does not include the subsequent action of the convening authority. Necessarily, then, I believe that the sentence which may be adjudged on rehearing is limited only by that originally adjudged by the court-martial. The day when the court-martial's findings and sentence was considered to be merely an inchoate recommendation to the convening authority has long since passed, and I, for one, am willing to recognize that fact.

One other matter of some importance should be noted. Even if the principle that the convening authority's action is part of the original sentence is to be the law of the military, nevertheless the accused should not prevail in this instance. Here, the first opinion of the board of review holds that the original convening authority erred when he acted on the findings and sentence. I assume, therefore, that so long as that decision is not reversed, his action was invalid and there were no legal findings and sentence. When that matter reached the board of review the first time, the accused did not defend the ruling of the reviewing officer. On the contrary, he argued before the appellate agency that the clemency extended by the convening authority had rendered the findings and sentence unsupportable in law and that a rehearing was necessary. He was successful in part, but now he contends that the board's ruling, which he sought as a shield to protect him from prejudice, is a sword with which he can smite the Government. I am not particularly impressed with that argument for the accused cannot have it both ways. Either the findings and sentence were legal and binding on both parties, or they were illegal and both parties should be restored to the positions they occupied prior to the commission of the error.