UNITED STATES

v.

John P. DOTSON, Seaman Apprentice,
U. S. Coast Guard.

CGCMS 23428.
Docket No. 821.

U. S. Coast Guard Court of
Military Review.

25 March 1980.

Trial Counsel: LT Bruce E. Weule.

Defense Counsel: LT Andrew W. Anderson.

Appellate Defense Counsel: LT Jon W. Peterson.

Appellate Defense Counsel: LT Judith M. Hammond.

Appellate Government Counsel: LCDR Larry F. Wheatley.

Appellate Government Counsel: LCDR Robert M. Ferguson.

## OPINION

MORGAN, Chief Judge:

We formerly returned this record for a new legal officer's review and a new action by an officer exercising general court-martial jurisdiction because the original district legal officer's review was not served on the defense counsel prior to the action by the supervisory authority as required by *U. S. v. Goode*, 1 M.J. 3 (C.M.A.1975). We also noted several deficiencies in the district legal officer's review. *U. S. v. Dotson*, 6 M.J. 864 (C.G.C.M.R.1979). The record has now been reviewed by another district legal officer and the findings and sentence have again been approved by an officer exercising general court-martial jurisdiction.

Appellate defense counsel now asserts that an issue of Seaman Apprentice Dotson's mental capacity to cooperate in his defense was raised but left unresolved at trial; that the new district legal officer's review is prejudicially inadequate for failure to discuss the issue of the accused's mental capacity to stand trial; that defense counsel erroneously assisted the accused in his pursuit of a bad conduct discharge; and that, in any event, a sentence including an approved bad conduct discharge is inappropriate for Seaman Apprentice Dotson on the record before us. We find appellate defense counsel's assertions of error to be without merit and affirm the findings and sentence.

The defense claim that an issue of Seaman Apprentice Dotson's lack of capacity to cooperate in his defense was raised at trial is based on the accused's testimony during sentencing proceedings that he felt he could no longer perform his duties and complete his enlistment in the Coast Guard and would like a bad conduct discharge. At the close of the accused's testimony the following colloquy ensued between the military judge and defense counsel:

"MJ: Have you searched for evidence in favor of the defendant that could be presented here, that—

DC: I have, your honor. I have searched for and uncovered evidence which would be favorable to the defendant, your honor.

MJ: Are you prepared to present it or have you been instructed not to present it?

DC: I have been instructed by the defendant, he would not desire me to present such evidence, your honor.

MJ: Have you explored for any indications that the defendant is not mentally competent to make the kind of decisions—

DC: Yes, sir. I have had him examined by Doctor SHORT of the Public Health Service, who has not entered any findings in that line.

MJ: You're satisfied that there is no problem along those lines?

DC: Yes sir. I am satisfied."

No evidence of Doctor Short's findings was presented and no further inquiry was made with respect to the accused's mental capacity.

Appellate defense counsel reasons that the accused must have lacked mental capacity since he did not cooperate in his defense. Instead, he requested a bad conduct discharge, the most serious punishment allowable at his trial, and forbade defense counsel from presenting favorable mitigating or extenuating evidence on his behalf. Counsel concludes that this conduct caused the military judge to question the accused's mental capacity but the issue was left unresolved.

The issue of lack of mental capacity is normally raised by the defense counsel but if there is reasonable indication that inquiry respecting the accused's mental capacity is warranted in the interest of justice, it becomes the duty of the court to call for evidence on the matter. Paragraph 122a, Manual for Courts-Martial, 1969 (Rev.). Of course an accused is presumed to be sane initially and this presumption authorizes the court to assume that the accused was and is sane until evidence is presented to the contrary. Paragraph 122a, MCM, 1969 (Rev.); *U. S. v. Biesak*, 3 U.S.C.M.A. 714, 14 C.M.R. 132 (1954). The right of the court to assume that the accused was and is sane continues until a reasonable doubt of his sanity is raised by the evidence. Paragraph 138a(1), MCM, 1969 (Rev.); *U. S. v. Biesak, supra.*

An accused's request for a bad conduct discharge, standing alone, is not evidence of mental incapacity and there is no other evidence in this record tending to raise any reasonable doubt that the accused was and is sane. Indeed, trial defense counsel assured the military judge that Doctor Short had not "entered any findings" that the defendant was not mentally competent and expressed his own satisfaction that there was no problem along those lines. Thus, there was no further duty on the military judge to inquire into the mental capacity of the accused to stand trial. See *U. S. v. Weatherford*, 19 U.S.C.M.A. 424, 42 C.M.R. 26 (1970); *U. S. v. Drake*, 21 U.S.C.M.A. 226, 44 C.M.R. 280 (1972); *U. S. v. Lopez-Malave*, 4 U.S.C.M.A. 341, 15 C.M.R. 341 (1954); U. S. v. Lewis, 14 U.S.C.M.A. 79, 33 C.M.R. 291 (1963); *U. S. v. Sexton*, 1 M.J. 679 (N.C.M.R.1975); *U. S. v. Riege*, 5 M.J. 938 (N.C.M.R.1978) petition for review by U.S.C.M.A. denied 6 M.J. 196; *U. S. v. Walker*, 20 U.S.C.M.A. 241, 43 C.M.R. 81 (1971).

The district legal officer did not mention a possible issue of the accused's mental capacity to stand trial nor was discussion of such an issue required. A legal officer writing the review of a record of trial is permitted to presume that the accused was mentally competent to stand trial and is not required to discuss the question of the accused's mental capacity unless the issue is raised by the record or by other evidence brought to the legal officer's attention. No such evidence in the record or allied papers was before the district legal officer so as to require discussion in this case. Nor was there any requirement, as contended by appellate defense counsel,

that the officer exercising general court-martial jurisdiction should have been advised that the accused's guilty pleas to the offenses of which he was convicted was a mitigating factor to be considered in determining what parts or amounts of the sentence should be approved. Paragraph 85b, MCM, 1969 (Rev.); *U. S. v. Fields,* 9 U.S.C.M.A. 70, 25 C.M.R. 332 (1958); *U. S. v. Jemison,* 10 U.S.C.M.A. 472, 28 C.M.R. 38 (1959).

After the military judge had announced the sentence of confinement at hard labor for· six months, forfeiture of $265.00 per month for six months, reduction to pay grade E–1 and discharge from the service with a bad conduct discharge, he attempted to explain his rationale for the sentence adjudged as follows:

"I've imposed the maximum sentence on you. In doing so—I'm doing this because this is about as flagrant, the flaunting of the law in respect to the offenses that you have been convicted of and plead guilty to, as I have ever seen. You, so to speak, just slammed your enlistment and oath down and said to hell with it, I took an oath once but I have decided that I am not going to adhere to it, my work is no good. You can't under those circumstances, expect me to believe you will at this point keep your word in respect to anything else, even though you've indicated that you might.

"The other thing, I imposed this sentence on you for is because I think you are being absolutely stupid and ridiculous, and I have imposed this sentence of confinement at hard labor to keep you under strong custody until such time as it appears that you don't need such strong custody; and hopefully during that time, one of these authorities that will be working with you, and they will be working with you, can get through your head that you want to be restored; and in which case, hopefully, the powers that will act on your sentence will be able to restore you, that's what I would like to see, and the sooner the better, as far as I am concerned. "So with this, I am passing the maximum sentence on you for

those reasons, and I hope in due course there will be cause to mitigate that in some way, but I just don't see it in front of this court today."

This statement was not mentioned by the district legal officer in his review for the officer originally taking supervisory authority action on the record leading us to observe in our initial consideration of the case:

"* * * [W]e believe that, in this case, the accused was entitled to have the judge's remarks brought to the attention of the supervisory authority for his consideration in determining what action to take with respect to the sentence." 6 M.J. at 867.

■ The district legal officer writing the second review of the record which is now under attack by appellate defense counsel did not incorporate the statement in his review but he did list it as one item to be considered for sentencing purposes and referred to the appropriate page of the record of trial where the statement could be found. Under the circumstances, we believe that the statement was accorded adequate attention in the review since it was at most a suggestion that reviewing authorities consider restoring the accused to duty conditioned upon a change in his attitude and his performance while in confinement. See *U. S. v. Massingill,* 21 U.S.C.M.A. 428, 45 C.M.R. 202 (1972); *U. S. v. Erwin,* 46 C.M.R. 1265 (C.G.C.M.R.1973). Additionally, we note that trial defense counsel interposed no objection to the adequacy of the district legal officer's review although he was served with a copy of it more than three weeks before the second action was taken on the record by an officer exercising general court-martial jurisdiction. See *U. S. v. Goode, supra; U. S. v. Watkins,* 2 M.J. 1276 (C.G.C.M.R.1976); *U. S. v. Barnes,* 3 M.J. 406 (C.M.A.1977); *U. S. v. Ringor,* 3 M.J. 1104 (N.C.M.R.1977) petition for review by U.S.C.M.A. denied 4 M.J. 202 (C.M.A.1978).

· The original supervisory authority approved only so much of the sentence as provided for confinement at hard labor for

four months, forfeiture of $265.00 per month for six months, reduction to pay grade E–1 and discharge from the service with a bad conduct discharge. The accused served the approved confinement and has since been on appellate leave. In discussing the sentence which the second officer exercising general court-martial jurisdiction could or should approve, the district legal officer included in his review the maximum sentence authorized, the sentence adjudged, the sentence approved on prior review and his own recommendation. He mentioned various factors which should be considered in determining what parts or amounts of the sentence should be approved, including 62 days of pretrial confinement served by the accused. The district legal officer then added:

> "Due to the somewhat unusual situation caused by the Court's invalidation of the earlier action and the long period of time which has passed since the accused's original release from confinement, approval of additional confinement at this juncture seems inappropriate."

██ The clear implication to be drawn from the district legal officer's language is that the prior actions on the record were of no effect and that the second officer taking supervisory authority action on the record could, in the exercise of his discretion, approve the full six months confinement originally adjudged. In that respect the advice was erroneous since the actions of the prior reviewing authorities fixed the limits of both the findings of guilty and the sentence in all subsequent proceedings in the case. *U. S. v. Dean*, 7 U.S.C.M.A. 721, 23 C.M.R. 185 (1957); *U. S. v. Cansdale*, 7 M.J. 143 (C.M.A.1979). The second officer taking supervisory authority action on the record approved only the findings of guilty and so much of the sentence as had formerly been approved. Thus, the impact of the misleading advice is considered to have been negligible and the error was waived by the failure of trial defense counsel to object. *U. S. v. Goode, U. S. v. Watkins* and *U. S. v. Barnes*, all *supra.*

██ As previously noted the accused took the witness stand during sentencing proceedings. Under questioning by his defense counsel he testified that he was having family problems and asked around for some help on the Coast Guard Cutter MUNRO but he didn't get any help so he decided the best thing he could do was leave. His dissatisfaction with the Coast Guard had increased to the extent that he would not stay and perform his duties if he were returned to the MUNRO and he did not feel that he could complete his enlistment in the Coast Guard. In fact he felt that he would continue to go AWOL repeatedly and he would like a bad conduct discharge. Subsequently, defense counsel argued that in view of his client's adamant desire for a bad conduct discharge the judge should consider the sixty two days of pretrial confinement as otherwise adequate punishment and sentence the accused to a bad conduct discharge without further confinement. Appellate defense counsel contends that the tactics employed by trial defense counsel constituted an abandonment of his proper role of advocacy to Seaman Apprentice Dotson's prejudice, citing *U. S. v. Doctor*, 41 C.M.R. 785 (N.C.M.R.1969).

This very question has been considered on several occasions by the Court of Military Appeals and it seems to be the settled law of the military that trial defense counsel may properly assist an accused in presenting to the sentencing authority his reasons for seeking a bad conduct discharge from the service and may thereafter argue for such punishment if that is his client's wish. In this case trial defense counsel did no more. Consequently, his conduct of the case in accordance with his client's desires should not be condemned. See *U. S. v. Weatherford* and *U. S. v. Drake* both *supra; U. S. v. Richard*, 21 U.S.C.M.A. 227, 44 C.M.R. 281 (1972). Cf. *U. S. v. Mitchell*, 16 U.S.C.M.A. 302, 36 C.M.R. 458 (1966); *U. S. v. Garcia*, 18 U.S.C.M.A. 75, 39 C.M.R. 75 (1968); *U. S. v. Schwartz*, 19 U.S.C.M.A. 431, 42 C.M.R. 33 (1970).

██ Seaman Apprentice Dotson stands convicted of four offenses of unauthorized absence for periods respectively of 18 days,

1 day, 21 days and 5 days all during the period 2 January 1978 to 22 February 1978 in violation of Article 86, UCMJ, 10 U.S.C. § 886 and one offense of missing the movement of USCGC MUNRO through design on 13 January 1978 in violation of Article 87, UCMJ, 10 U.S.C. § 887. There is no evidence of prior misconduct by the accused during his service in the Coast Guard from 13 September 1976 until the inception of his first period of unauthorized absence on 2 January 1978. Nor is there evidence of mitigating or extenuating circumstances since the accused had forbidden his counsel to present any such evidence. Instead there is Seaman Apprentice Dotson's sworn testimony adamantly insisting that he would not continue to serve in the Coast Guard accompanied by his repeated requests that he be given a bad conduct discharge in order that he could leave the service without further delay.

Considering the accused's repeated absences over a period of nearly two months together with his request for a bad conduct discharge and his insistence that he would not serve longer in the Coast Guard, we find the approved sentence including a bad conduct discharge appropriate on the basis of the entire record before us. See paragraph 76a(4), MCM, 1969 (Rev.); *U. S. v. Blakely*, 49 C.M.R. 875 (C.G.C.M.R.1975); *U. S. v. Riley*, 1 M.J. 639 (C.G.C.M.R.1975); *U. S. v. Rasmussen*, 4 M.J. 513 (C.G.C.M.R. 1977); *U. S. v. Weatherford, U. S. v. Drake* and *U. S. v. Richard*, all *supra*.

The findings of guilty and the sentence approved on review below are affirmed.

Judges BRIDGMAN and ALCANTARA concur.

HOLLAND, Judge, concurring in part and dissenting in part:

I concur in affirming the findings of guilty. In my view, however, the unsuspended sentence approved by the supervisory authority was disproportionate to the offenses of which the accused was convicted. The only evidence in aggravation of these offenses is the judicial admission of the accused that he would not continue to serve out his enlistment and that, if the bad conduct discharge he desired could not be processed within three months, he would probably go AWOL again. Since these statements were made after the accused had been in pretrial confinement for 62 days, and presumably therefore were not impetuous utterances, an unsuspended bad conduct discharge would have been an appropriate punishment had the sentence not also included so much confinement. Taken together, however, the sentence is inappropriately excessive. I would accordingly take judicial notice of the discretionary administrative discharge proviso of the authority under which the accused is currently in leave without pay status, i. e. Sections 12–B–44 of the Coast Guard Personnel Manual, and I would disapprove the bad conduct discharge.