UNITED STATES

v.

Kevin J. RILEY, Machinery
Technician Third Class.

CGCMS 23056.
Docket No. 780.

U. S. Coast Guard Court of
Military Review.

12 Sept. 1975.

Military Judge: CDR Floyd D. Hunter,
USCG.

Trial Counsel: LT Stephen E. Hart,
USCGR.

Defense Counsel: LT John E. Shkor,
USCG.

## OPINION OF THE COURT

ROSENWASSER, Chief Judge:

Two AWOL charges were preferred against the accused following his receipt of permanent change of station orders at Base New York, in June 1974 transferring him to the Coast Guard Loran Station on Sitkinak Island in Alaska. He put the government to the proof on the specification of the earlier AWOL, which alleged that he

did on or about 25 July 1974, without authority absent himself from his unit to wit: U.S. Coast Guard Base Kodiak, Kodiak, Alaska, at which he was required to be for further transfer to U.S. Coast Guard Loran Station Sitkinak, Alaska, and did remain so absent until on or about 15 August 1974.

A military jury found him guilty, contrary to his plea. He entered a guilty plea to the other specification which set forth a 61-day AWOL from New York beginning the day after termination of the Kodiak AWOL.

We are faced with the question of whether the evidence on the contested specification supports the jury's finding of guilty. Riley's transfer orders show that he was directed to proceed and report to Base Kodiak not later than 2400 hours on 24 July 1974, for further transfer to the permanent station, the Loran Station at Sitkinak. Riley having departed Base New York on 18 June 1974, Base Kodiak was considered to be the unit to which he was attached, thereafter and on 25 July 1974.

Article 8–A–5 of the Coast Guard Personnel Manual prescribes:

(b) *Failure to report in compliance with orders.* When a person fails to report in compliance with orders, the responsible officer of the unit to which ordered to report shall:

.    .    .    .    .

(2) prepare a page 12 of the service record from information contained in advance copy orders, showing the date and hour individual failed to report in compliance with orders  .   .   .

The crucial piece of evidence relied on by the government here was contained in a "corrected copy" of a page 12 of the service record. It had been prepared a week before the trial *at Base New York.* It read:

25 July 74: Failed to report in compliance with PCS orders at 2400, 24 July 1974 to Base Kodiak, Kodiak, Alaska. AWOL from 0001 this date. Intentions unknown.

The entry which the above entry "corrected" had also been made at Base New York, but omitted the words "to Base Kodiak, Kodiak, Alaska".

■ The entry, admitted in evidence over objection as Prosecution Exhibit 3, was competent as evidence only if it qualified as an "official record" or as a "regular course of business" entry under exceptions to the hearsay rule. The law of evidence is settled, that in order to qualify as an "official record", the entry must have been made pursuant to a legally imposed duty to make the entry. As stated in *United States v. Hagan,* 2 U.S.C.M.A. 324, 8 C.M.R. 124 (1953):

the crux of the test for admissibility in evidence of a document as an "official record" is that it shall have been made by one whose duty it was (1) to make it, and (2) to know or ascertain  .   .   .   the truth of the matter recorded.

It "must be made in the performance of a legally imposed duty to record that fact or event". *United States v. McNamara,* 7 U.S.C.M.A. 575, 23 C.M.R. 39 (1957).

■ Prosecution Exhibit 3 did not come within the "official records" exception to the hearsay rule simply because on 25 July 1974 the duty to record the AWOL was legally imposed on Base Kodiak, not Base New York. It is a text-book example of what is *not* admissible as an official record. Thus, a note at page 237, Larkin and Munster, Military Evidence (1959) reads:

.   .   .   where an accused was ordered from X command to Y command, and regulations provided that upon issuance of such orders and detachment from X command, the person involved was then attached to Y command, upon

an accused's failure to report in accordance with such orders, a service record entry to that effect by X command would not be an official record for the reason that the regulations require that such entry be made by the appropriate official of Y command.

See also: paragraph 144*b* MCM 1969; DA Pam 27–172 Evidence (1961) page 228.

Nor was Prosecution Exhibit 3 admissible under the "regular course of business" exception to the hearsay rule, because it is not the regular course of business of any unit of the Coast Guard from which a member has departed with transfer orders, to record the member's AWOL from his new unit. In fact, the Chief Petty Officer who made the entry on Exhibit 3 testified that it was *not* his unit's responsibility to record a transferee's failure to report at the new unit.

■ The prosecution did introduce a competent document prepared at Base New York recording the accused's voluntary surrender there on 15 August 1974. This document, Prosecution Exhibit 4, recorded the fact of surrender in the following entry:

15 August 74: Surrendered to this unit at 1422 this date having been on UA since 0001, 25 July 1974. Retained pending disciplinary action.

In view of Riley's orders, he conceivably could have been AWOL from Sitkinak Loran Station rather than Kodiak Base when he turned himself in at Base New York on 15 August. How reliable is the entry that he had been "on UA since 0001, 25 July 1974"? Evidence produced by the defense, including the testimony of the entrant, shows that it was based entirely on a message received from Loran Station Sitkinak stating that Riley had not arrived at Sitkinak as of 6 August 1974, and requesting confirmation of his reporting date. Thus the entry was based on speculation—a guess—that he had not reported at Kodiak. Knowing the source of the entry, we cannot accept it as credible evidence proving as a fact that the accused was AWOL from Kodiak 25 July 1974. Similarly an entry in the Personnel Diary at Base New York concerning Riley's AWOL is not entitled to any weight as evidence because the entry is not based on trustworthy information.

■ The prosecution could have and should have obtained a record entry from Base Kodiak before going to trial in this case. Because it did not do so, the competent evidence of record falls short of proof beyond a reasonable doubt. The allegation of the specification that the accused was AWOL from Base Kodiak was material and had to be proved. If the jury had, in its findings, substituted a finding that the accused was AWOL from Sitkinak, instead of from Kodiak, the variance would have constituted fatal error. *United States v. Holly,* 19 C.M.R. 944 (A.F.B.R. 1955); *United States v. Barnes,* 22 C.M.R. 439 (A.B.R. 1956); *United States v. Holmes,* 43 C.M.R. 446 (A.C.M.R. 1970); *United States v. Rosen,* 45 C.M.R. 228 (A.F.C.M.R. 1972). We cannot uphold the finding of guilty here by saying that he must have been AWOL from somewhere when he surrendered on 15 August. If he was AWOL, it was either from Kodiak or from Sitkinak. The government chose to charge that it was from Base Kodiak. But the government's evidence failed to prove it. Accordingly, the finding of guilty must be set aside.

■ The sentence to a bad conduct discharge and confinement for 60 days must be reassessed. The confinement has been served; we must determine whether the bad conduct discharge should stand as part of a sentence for a 61-day AWOL. The accused was under 21 and had more than two years of good service when given the orders to Alaska. He had no previous convictions and only one mast punishment for an AWOL in June 1973. He was married, the father of one child, and his wife was pregnant at the time of his orders; he was concerned for her psychological well-being. He testified that she was "a very nervous person". However, he also testified, when asked by his counsel to state the reason for his AWOL, that it was "mainly because I was fed up with the Coast Guard." And he stated with reference to a bad conduct dis-

charge, "I'll just keep going AWOL till they give me one." Appellate exhibits show that, contrary to his counsel's urging, the accused came into court intending to ask for a BCD; and he requested his counsel to assist him to achieve what he desired. Thus the accused came into court determined to ask for a BCD even though, at the same time, he intended to, and did, exercise his right to put the government to the proof on one of the two charges against him.

On the basis of the entire record, our conclusion upon reassessment is that the bad conduct discharge should be approved. The finding of guilty of specification 2 of the charge is disapproved and the said specification dismissed. The findings of guilty of specification 1 and the charge are approved and the sentence is affirmed.

ROSENWASSER, C. J., and MAGUIRE, J. (concurring).

Judges YOUNG and LYNCH did not participate in the decision of this case.