UNITED STATES

v.

**Paul W. RASMUSSEN, Seaman Recruit, U. S. Coast Guard.**

**CGCMS 23349.
Docket No. 810.**

U. S. Coast Guard Court of
Military Review.

Sentence Adjudged 19 Oct. 1976.

Decided 23 Sept. 1977.

Trial Counsel: LCDR Nils Linfors, Jr., USCG.

Defense Counsel: LT S. W. Crawford, USCGR.

Appellate Defense Counsel: LT Duncan C. Smith, III, USCGR.

For the United States: LT Richard A. Legatski, USCGR.

## OPINION OF THE COURT

ROSENWASSER, Chief Judge:

The accused was tried by a special court-martial (judge alone) on the sole charge of

having absented himself from his unit without authority for a period of slightly more than three months. He was found guilty by plea and the judge sentenced him to a bad conduct discharge without other punishment. The sentence has been approved by the convening authority (13 January 1977) and by the supervisory authority (9 March 1977).

Eight errors have been assigned but, in our opinion, only two warrant discussion. The first of these concerns the appropriateness of the bad conduct discharge; the other asserts that the record contains two legal reviews by the staff legal officer, but that the defense counsel was not afforded the opportunity of commenting on the second review, and appellant was therefore legally prejudiced. Our ultimate judgment is that the sentence should be approved; and that no corrective action with regard to the legal officer's review is required.

Our statutory mandate is to affirm only such sentence or part of the sentence as the Court "finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c) UCMJ, 10 U.S.C.A. § 866(c). In deciding what sentence "should be approved", courts of military review exercise "the judicial function of determining legal appropriateness"; their sentence powers include the power to extend clemency. *United States v. Lanford*, 6 U.S.C.M.A. 371, 378, 20 C.M.R. 87, 94 (1955).

As in any case where we are called upon to determine the appropriateness of a bad conduct discharge, our decision must rest on the particular facts and circumstances of the particular case. It is the judges' reaction to the totality of relevant information in the record that is determinative.

In the instant case we note that the appellant had entered the Coast Guard when he was 17 years old, but he had been in the Coast Guard more than two years and nine months when he commenced the AWOL for which he was here tried. Less than three months earlier he stood trial before another special court-martial; at that trial he was convicted of possessing marihuana and breaking restriction. His sentence was four months' confinement and a pay forfeiture; the supervisory authority suspended most of the pay forfeiture and 44 days of the confinement; the suspension action was taken 10 days before the current offense. There were no other previous convictions. However, beginning in the ninth month of his enlistment, he had received nonjudicial punishment seven times. His offenses were mainly very brief AWOLs but they also included sleeping on watch when posted as a sentinel, introducing marihuana, and going from his duty section.

In extenuation and mitigation, the accused presented live testimony by his father and by a petty officer who, among other things, expressed the opinion that the command had failed to provide proper counseling for the accused. The accused himself told the court that he "would very much rather have an administrative discharge than a punitive discharge." His counsel asked him if he thought he could finish out his term in the Coast Guard if his sentence extended only to confinement. He replied: "I think that I could make a real good try of it now that I have my thoughts together—my head together." The defense also presented a number of documentary exhibits, including the stipulated testimony of a work supervisor and two reports by psychiatrists.

More than a month before the accused's first court-martial, his commanding officer had considered requesting the accused's administrative separation, on the ground that he required constant supervision and lacked adaptability for military life. Shortly before this, a Navy psychiatrist reported that the accused had "some potential for useful service" if given "some supportive administrative counseling". Later on, prior to the present trial, a Public Health Service psychiatrist reported that the accused was not psychotic or neurotic, but had poor impulse control and a low frustration tolerance. He diagnosed "immature personality" and recommended discharge for unsuitability.

The foregoing is only a brief recapitulation of the information produced in the sentence proceeding. Our court's decision, which was not an easy one to make, is based on a consideration of the entire record presented to us: we approve the sentence.

With regard to the legal officer's review, appellant asserted:

THE APPELLANT WAS PREJUDICED BECAUSE DEFENSE COUNSEL WAS NOT GIVEN THE OPPORTUNITY TO COMMENT ON SECOND STAFF LEGAL OFFICER'S REVIEW.

The claim of error arises out of the rule of *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). *Goode* directed that the staff judge advocate's review be served on the defense counsel, "with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment." It contemplated a five-day period within which the defense counsel could offer his comments, and directed further that proof of service of the review, together with the comments of the defense counsel, "shall be made a part of the record."

The failure of a record to show compliance with the *Goode* rule was held, in *United States v. Hill*, 3 M.J. 295 (C.M.A.1977) to be of such importance as to necessitate a return of the record for a new review and action by a competent supervisory authority. The *Hill* opinion said that "the purpose of *Goode* can be effected only if we insist upon compliance therewith". What was the purpose of *Goode*? As stated in *Hill*, the rule . . .

was predicated on a desire to eliminate delays encountered in claims of error in post-trial reviews and the exhaustion of appellate resources when such errors could easily and expeditiously be resolved prior to the convening and supervisory authorities' actions.

There is no question but that the *Goode* rule was complied with, so far as the 13-page review dated 17 February 1977 is concerned. Attached to the record is the response to it, dated 3 March 1977, made by the defense counsel.

■ The question is raised *because* of the response, and because of an ensuing communication to the supervisory authority by his legal officer. The defense counsel's response dated 3 March 1977 was received in the staff legal office on 7 March 1977. The response consisted of comments by the defense counsel centered on the fact that more than 90 days had elapsed since the trial. The staff legal officer's review did not address any 90-day delay issue. Defense counsel's comments referred repeatedly to *United States v. Brewer*, 1 M.J. 233 (1975) and *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). Neither of these cases were mentioned at all in the staff legal officer's review. Counsel acknowledged that *Brewer* "specifically dealt with those convictions in which post-trial restraint was awarded"; nevertheless, he stated:

I contend that a proper reading of *U. S. v. Brewer*, *supra*, logically includes those cases involving BCD-alone sentences; and thus, it requires the 90 day post-trial review time limitations.

The staff legal officer's communication was dated the next day, 8 March 1977. In effect he told the supervisory authority that the defense counsel's comments had raised a non-issue. He correctly stated that *Brewer* and *Dunlap* apply only where an accused is under post-trial restraint.

In view of the foregoing facts, we reject appellate counsel's characterization of the 8 March 1977 communication as a "Second Staff Legal Officer's Review". It neither amended nor supplemented the review dated 17 February 1977. There was no deficiency in that review: a review may be deficient when it fails to discuss an important issue in the case, but it is not at fault in failing to discuss non-issues.

The legal officer's communication, written as a "memorandum" to the supervisory authority, was just that: a communication, a memorandum. Whatever the ramifications of the *Goode* rule, the rule has its

limits. It does not prescribe that the defense counsel have the last word. It does not contemplate an adversary appellate proceeding at the supervisory authority level. The defense counsel in the instant case was given the "opportunity to correct or challenge" and to comment on "any matter" he wished to raise, as directed by *Goode*. He wished to and did raise the *Brewer-Dunlap* matter. He thereby exercised the full extent of the privilege given him by *Goode*. He made his point in his 3 March 1977 comment. He was not entitled to further rebuttal. He made a "claim of error" on the post-trial review and the claim was "easily and expeditiously" resolved prior to the supervisory authority's action. Thus the purpose of the *Goode* rule was satisfied.

█ As for the other assignments of error, one of them claims, relying on *Brewer* and *Dunlap, supra,* that the appellant was denied a speedy review because final action was not taken within 90 days. As already noted, the assignment has no merit.

█ Other assignments included assertions that the accused's pretrial confinement was illegal; that the record of trial was not verbatim; and that it was error for the judge to have considered NJP records more than one year old. All these matters were discussed in the SJA review; defense counsel in his comments on the review did not challenge its disposition of these matters. Therefore, if there was error, it was waived. *United States v. Goode, supra.* Waiver apart, the assertions are unsound.

Remaining assignments of error lack merit.

The finding of guilty and the sentence are affirmed.

Judge LYNCH concurs. Judge ALCANTARA concurs and filed opinion. Judge MAGUIRE filed dissenting opinion. Judge BURGESS did not participate.

ALCANTARA, Judge, concurring:

I concur with the majority opinion except to the extent that my brethren would characterize the "second staff legal officer's review" as only a "communication" or "memorandum" in order to avoid the rule of *Goode*. I don't believe such characterizations are necessary or desirable. The purpose of *Goode* is clearly stated in the majority opinion as being devised to correct errors early in the judicial process. Given my perception of the Court's intent in *Goode*, I cannot imagine that they intended that each communication subsequent to the original Staff Judge Advocate's review be a matter for application of the rule. Such extension of the rule would have the effect of turning what was a simple solution to a perceived problem into a complex adversary appellate process. I would limit the rule in *Goode* to its simplest terms giving defense counsel one chance to comment on the Staff Judge Advocate's review. Should a further communication from the Staff Judge Advocate contain errors, these could be corrected in the normal review process subsequent to the convening authority's action. This interpretation would give effect to the rule, thus resolving a great majority of incipient errors, and avoid the procedural complexities which would be generated by other interpretations.

MAGUIRE, Judge, dissenting:

I dissent only on the question of the need to furnish the second piece of staff judge advocate post-trial advice to the defense.

I think that the document in question in this case is clearly a part of the staff judge advocate advice to the officer exercising general court-martial jurisdiction and is subject to the rule in *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). It is labeled as such; its subject is: "Special court-martial; . . . Staff Legal Officer review and advice concerning." It proffers legal advice on interpretation of two decisions of the Court of Military Appeals and a section of the Coast Guard Supplement to the Manual for Courts-Martial.

If it is not such advice to the authority addressed, of course it has no business being in the record; but it is in the record and is unmistakably what it purports to be.

My colleagues shy from the belief that the rule in the *Goode* decision "gives the defense the last word" in the post-trial review proceeding. Whatever results may stem from such a view, I am afraid that that is just what is intended, and as long as a staff judge advocate advice is given touching on issues susceptible of resolution by the convening or reviewing authority the referral to the defense for consideration and possible reply is mandatory.

The spectre is raised that ingenious counsel may prolong the period of review by filing an infinite series of comments entailing an infinite series of staff judge advocate advices enabling the automatic strictures of the rule in *United States v. Brewer,* 1 M.J. 233 (1975) to come into play. The fact that the collision of two rules of the Court of Military Appeals may result in an intolerable situation is a temptation but not a justification to rewrite one of the rules (except for that Court itself).

The majority here does not say that only the first product labeled "Staff Judge Advocate Advice" need be submitted to the defense nor does it say that if a second such product clearly ill advises the recipient, or advises him correctly for the first time on a matter previously untouched, the advice need not be submitted to the accused. All it appears to say is that the second advice given in this case is not advice within the statute because the matter dealt with a post-trial happening and because the proposition of the defense was so clearly wrong that the reply was not advice at all. The trouble with that is that the very action of staff judge advocate advice is itself a post-trial happening and the judgment that the proposition advanced was so clearly wrong is a judgment *ad hoc* made by this court for this case only. The fact is that on the spot the staff judge advocate considered the matter worthy of a seven paragraph utterance prepared in the same manner and addressed in the same way, via two intermediaries, to the same authority. (I do not question here the propriety of the staff legal reviewer's submitting his advice subject to comment by two other intermediate authorities.) The Court's opinion emphasizes that the second staff judge advocate document was labeled a "memorandum"; it was "just that: a communication, a memorandum." In fact, the styling, the format, the subject of both documents were identical, and, as pointed out, served the same function: advice.

It is easier to comply with a rule than to rewrite it to fit the peculiar circumstances of one case, a course of action that invariably leads to further confusion, just as have the two rules mentioned herein themselves.

I am not at all certain that the court here has really construed the rule so as to place the advice document outside its scope, but suspect rather that it has held the failure to refer the advice to defense counsel to be non-prejudicial, a test held improper in connection with this rule in *United States v. Hill,* 3 M.J. 295 (C.M.A.1977).

To lay the spectre haunting my colleagues it is enough to point out that there are three remedies available without turning an irksome rule into a complete morass:

(1) rely on the element in the *Brewer* case rule that excepts delays attributable to the defense;

(2) release the person from confinement, under a strict reading of the rule; or

(3) recognize that the defense tactic is so meretricious or clearly erroneous that no reply advice is needed.

In the instant case we had, fortunately, no complication of continuous confinement as a result of the sentence of the court-martial so that the spectre was not present. Had it been, and if the view of the majority is factually correct, the third choice was plainly present. If the defense comment is worthy of reply at all, compliance with the rule is desirable for two reasons: (1) the rule is kept as simple as possible, and (2) the element of fairness implicit in the rule is kept.