**UNITED STATES**

v.

**James L. BAUGHMAN, Jr., Seaman Recruit, U. S. Coast Guard.**

**CGCMS 23467.**
**Docket No. 820.**

**U. S. Coast Guard Court of Military Review.**

**3 Oct. 1979.**

Trial Counsel: LCDR A. W. Anderson, USCG.

Defense Counsel: LCDR Bruce E. Weule, USCG.

Appellate Defense Counsel: LT Robert R. Meeks, USCGR.

Appellate Government Counsel: LCDR Larry F. Wheatley, USCG.

## OPINION

MORGAN, Chief Judge:

Seaman Recruit James L. Baughman, Jr., U.S. Coast Guard, was tried by a special court-martial convened by the Commanding Officer, USCGC IRIS (WLB–395) at Seattle, Washington on 29 November 1978. The accused requested trial by judge alone and was convicted contrary to his not guilty plea of a single charge and specification alleging unauthorized absence from IRIS from 7 September 1978 until 10 October 1978 in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. The military judge received evidence of seven punishments of the accused by his commanding officer pursuant to Article 15, UCMJ, 10 U.S.C. § 815, evidence of one prior conviction of the accused by special court-martial and evidence of a prior conviction of the accused in a United States District Court. The judge sentenced the accused to be confined at hard labor for 90 days and to be discharged from the service with a bad conduct discharge. This sentence was approved by the convening authority and by the officer exercising general court-martial jurisdiction. Appellate defense counsel has alleged several errors only two of which warrant discussion.

The prosecution introduced evidence establishing the inception of the accused's unauthorized absence on 7 September 1978 and its termination 10 October 1978, as alleged in the specification. Seaman Recruit Baughman then took the witness stand in his own behalf in an effort to show that his period of unauthorized absence actually terminated 14 September 1978. He testified that he was on emergency leave at his home in Indianapolis, Indiana during the latter part of July and the greater part of August while his father was convalescing from a heart attack and open heart surgery at a hospital in Fort Wayne, Indiana. He stated that he was again on emergency leave in Indianapolis for the same reason from about 1 September until 7 September 1978. On the day his emergency leave expired, 7 September 1978, he called the U.S. Coast Guard Cutter IRIS from Fort Wayne and

talked with the executive officer, Lieutenant Horan. Lieutenant Horan did not authorize an extension of emergency leave but told Seaman Recruit Baughman that he would have to report to the nearest Coast Guard unit. The accused knew that there was a Coast Guard Recruiting Office at Indianapolis since he had enlisted there. According to Seaman Recruit Baughman's testimony he went to the Coast Guard Recruiting Office at Indianapolis between 7 and 14 September and made several calls there but no one was at the office and his calls were never answered. Finally on 14 September 1978 he called the Coast Guard Recruiting Office at Cincinnati, Ohio. He told the person with whom he talked that he was AWOL, that his father remained ill and that he needed to report to someone. He was told that the recruiter from Indianapolis was in New London, Connecticut for a week or more and that he should contact a Coast Guard warrant officer stationed at Fort Benjamin Harrison. This was about 15 miles from the accused's home in Indianapolis.

Seaman Recruit Baughman testified that he called the warrant officer 14 September, told him that he was AWOL and asked if he could come and report to him in person. The warrant officer told him that he had nothing for him to do at his office but that he could consider that he had turned himself in as of that day and that he should report to the Coast Guard Recruiting Office, Indianapolis the following Monday, 18 September 1978. According to the accused he did go to the recruiting office at about 0730 the morning of 18 September but when the recruiter had not arrived by about 0810 he left since he had to be at work by 0830.

Chief Warrant Officer Buell stationed at the Defense Information School, Fort Benjamin Harrison corroborated the accused's testimony concerning the telephone conversation on 14 September 1978 except that Seaman Recruit Baughman told him that he was on emergency leave rather than AWOL and for some reason was to check in with the recruiter. He told the accused

that he could consider that he had checked in with him even though he did not report in person. Chief Warrant Officer Buell called the recruiter, SK1 Smith, at 0830–0900 Monday morning 18 September 1978 and told him of the conversation with Seaman Recruit Baughman and that Baughman should be reporting to him sometime that day.

SK1 Smith testified that he was in the recruiting office from approximately 0745 to 0805 Monday morning 18 September 1978 before he locked the office for a few minutes while he went to pick up the mail. He believed he returned to the office before 0830. Seaman Recruit Baughman did not approach him about turning himself in but he had talked on the telephone with Baughman on 8 September 1978 when Baughman called him saying that he was on emergency leave and needed an extension because of his father being sick. SK1 Smith testified that he tried to contact someone at the Thirteenth District about Seaman Recruit Baughman's situation and believed he did talk with someone but he didn't recall what information he received. He tried to call the accused back approximately three times at the number he had left but nobody answered the phone. During a telephone conversation 18 September CWO Buell told SK1 Smith that Baughman was to report to his office that morning. At that time it was unclear whether Seaman Recruit Baughman was AWOL, on emergency leave or a humanitarian type transfer.

Appellate defense counsel urges as was contended at trial that Seaman Recruit Baughman's unauthorized absence terminated 14 September 1978 when he offered to report in person to Chief Warrant Officer Buell but was told that he could consider that he had checked in and that he should report to the Coast Guard Recruiter the following Monday morning.

In *U. S. v. Acemoglu*, 21 U.S.C.M.A. 561, 45 C.M.R. 335 (1972) the Court of Military Appeals considered the question of whether Captain Acemoglu had terminated his unauthorized absence in May 1969 when he visited the American Embassy at Ottawa, Canada, informed representatives of the Embassy that he was absent without leave and asked how he could return. He was placed in telephone contact with the military attaché who then and on a subsequent occasion advised Captain Acemoglu that he should submit himself to the military as soon as possible. He finally surrendered at the Embassy in December 1970. The Court found that Captain Acemoglu did not terminate his unauthorized absence by his initial appearance at the Embassy to seek advice or by his telephone conversations with the military attaché. These actions did not constitute a submission to military control but only reflected an inchoate desire to return at a date prior to his ultimate surrender.

In *U. S. v. Raymo*, 1 M.J. 31 (C.M.A.1975) the accused Army Private testified that while he was on unauthorized absence he received a letter directing him to report to his Selective Service Board. He did so in December 1971. When asked for his discharge papers or anything else relating to his military status he replied that he had none and disclosed that he had been AWOL since 1969. While at the Selective Service Board offices he talked with an Army Captain who directed him to go see the FBI which he did. At the FBI office an agent took the information Private Raymo supplied about his military status and tried to verify it without success. The FBI agent and the accused then went to see an Army recruiter in the same building but that visit was also fruitless and the accused later departed. On the basis of these facts the Court of Military Appeals said:

"Although as an officer the Captain [at the Selective Service Board] was authorized to apprehend the accused, * * * his failure to do so in this instance is not determinative. His directing accused to go see the FBI was an alternative means whereby he effectively exercised military control over accused. When the accused complied with these directions, * * * his submission to military control was complete. The conjunction of these two circumstances, therefore, effectively ter-

minated the illegal absence." 1 M.J. at 33.

Applying the principles announced by the Court of Military Appeals to the evidence in this case does not compel the conclusion that Seaman Recruit Baughman's unauthorized absence terminated either 14 September 1978 when he talked on the telephone with Chief Warrant Officer Buell, or on 18 September 1978 even assuming, as he testified, that he went to the recruiting office. His telephone conversation with Chief Warrant Officer Buell did not constitute submission to military control and, by his own admission, he did not thereafter report in person to the recruiter as he had been directed.

Moreover, the trial judge had before him the testimony of the recruiter, SK1 Smith, and that of Chief Warrant Officer Buell from which he was entitled to find that at the time the accused talked with those witnesses on the telephone respectively on 8 September and 14 September he misrepresented his status as being on emergency leave rather than on unauthorized absence. There was then before the trier of fact substantial competent evidence from which he was entitled to find beyond a reasonable doubt the existence of every element of the offense charged including the duration of the absence for the period alleged. See U. S. v. Papenheim, 19 U.S.C.M.A. 203, 41 C.M.R. 203 (1970); U. S. v. Wilson, 6 M.J. 214 (C.M.A. 1979). Our examination of the record of trial leaves us equally convinced beyond a reasonable doubt of the appellant's guilt.

During sentencing proceedings the military judge admitted evidence of seven prior punishments of the accused for various offenses pursuant to the provisions of Article 15, UCMJ, (PE–7), evidence of a conviction of the accused in the United States District Court for the Western District of Washington on 16 June 1978 for a violation of Title 18 United States Code Sections 659 and 2 (PE–8) and evidence of a prior conviction by special court-martial on 15 June 1978 for various offenses including unlawful entry of the Coast Guard Base Exchange, Astoria, Oregon and the larceny of more than one thousand dollars worth of merchandise therefrom (PE–9). Trial defense counsel interposed no objection to prosecution exhibit 9 evidencing the prior conviction of the accused by special court-martial and objected to the various copies of pages 4 from the service record of the accused comprising prosecution exhibit 7 only on the ground that they did not show that the accused "was afforded his right or waived the rights as afforded in the United States v. Booker [5 M.J. 238 (C.M.A.1977)]." The military judge overruled the objection on the ground that on each of the seven occasions the accused was punished pursuant to the provisions of Article 15, UCMJ, he was attached to or embarked in USCGC IRIS (WLB 395) and, therefore, had no right to refuse punishment. See Article 15(a), UCMJ; U. S. v. LeColst, 4 M.J. 800 (N.C.M.R.1978); U. S. v. Harrell, 5 M.J. 604 (N.C.M.R.1978).

The papers comprising prosecution exhibit 8 consist of a page 12 from the service record of the accused and two copies of what purports to be an order of the United States District Court for the Western District of Washington adjudging James Baughman guilty upon his plea of a violation of Title 18, United States Code, Sections 659 and 2 and suspending the imposition of sentence for a probationary period of three years. Neither of the copies of the District Court order bears the signature of the presiding judge and only the first copy bears the stamped name of the judge. This first copy also bears the purported signature of a deputy clerk of court on a form stamp certifying that the instrument "is a true and correct copy of the original on file in my office" together with what appears to be the seal of the Court. The second copy is identical in basic content to the first copy except that it bears what purports to be the signature of an assistant U. S. Attorney certifying it to be "a true copy of the Sentence Contained in our file".

Trial defense counsel objected to the admission of these papers on various grounds including that of relevance, that the page

12 from the service record of the accused was not made in accordance with applicable regulations, and, by fair interpretation, to the lack of authenticity of the purported copies of the United States District Court Order. Although the prosecution made no showing of the relevancy, officiality or authenticity of the papers, the military judge overruled the defense objection.

We believe that the trial judge's admission of prosecution exhibit 8 into evidence was error.

■ Evidence of a conviction in Federal District Court would not be admissible as a prior conviction under the provisions of paragraph 75b(2), MCM, 1969 (Rev.) which relates only to previous convictions by courts-martial and at most would be admissible as optional matter presented when a court-martial is constituted with a military judge as provided by paragraph 75d, MCM, 1969 (Rev.). Evidence of a conviction in United States District Court would be admissible under the provisions of this paragraph only if it were properly recorded in the accused's personnel records and only if it is for misconduct while a member of the armed forces. *U. S. v. Newbill*, 4 M.J. 541 (A.F.C.M.R.1977); *U. S. v. Martin*, 5 M.J. 888 (N.C.M.R.1978). Prosecution exhibit 8 does not meet either test.

The preparation of page 12 service record entries, Personnel Action (Form CG–3312A) is governed by Section 2.13, Chapter 2, U.S. Coast Guard Personnel Management Information System (CG–207–3). The deletion of page 12 service record entries is governed by Section 1.4.6(a)(1), Chapter 1 of the Personnel Management Information System. Thus, to qualify for admission under the official records exception to the hearsay rule as stated in paragraphs 144b and d, MCM, 1969 (Rev.) the page 12 service record entry portion of prosecution exhibit 8 must have been prepared in compliance with the foregoing provisions of the Personnel Management Information System.

The page 12 is dated 9 November 1978. Item 3 shows the effective date, 18 October 1977. Item 5 lists the action code as P 612. Item 6, "Type Entry" is blank. The Action Description in Item 7 states in part:

"MEMER [sic] RETURNED FROM CONFINEMENT FOR A CIVILIAN OFFENSE."

Other entries direct that Fireman Baughman's pay and allowances be started. The Remarks section, Item 12, the only portion of significance to the government's proof that the accused had been convicted in United States District Court, contains the following:

"MEMBER PLEADED GUILTY ON 78MAR01 TO THEFT OF INTERSTATE SHIPMENT IN U.S. DISTRICT COURT, SEATTLE, WA. ON 78JUN15 MEMBER WAS SENTENCED TO 3 YEARS PROBATION COMMENCING 78JUN16."

"FORM CG–3312A(016) PREVIOUSLY REPORTED ON TRANSMITTAL 052 OF 77 NOV 23 DELETED BECAUSE OF INCORRECT ACTION CODE."

The page tells us then that it was made 9 November 1978 to delete a prior page 12 submission made 23 November 1977 and effective 18 October 1977 because the prior submission contained an incorrect action code in Item 5.

Section 1.4.6(a)(1) of the Personnel Management Information System states that a deletion is required if an error has been made in Items 1–5 of page 12. Here the error was in Item 5 so as to require deletion of the page 12 as originally submitted. The procedure to be followed as explained in Section 1.4.6(a)(1) and as shown in Exhibits 1.4–1 through 1.4–3 is to prepare a new form completing Items 1–5 exactly as they appeared on the incorrect document. A "D" is to be placed in the "Type Entry" block, Item 6, and the transmittal number of the incorrect submission and the reason for the deletion is to be entered in the remarks space, Item 12. Other spaces are to be left blank except for the signature of the responsible officer, the date, name of permanent unit, name of preparing unit, name of the member, his grade or rate and the page number. A new form, if necessary, will then be prepared as if it were an initial submission. There is no duty upon or

authority for the person preparing the deletion to include new information such as the remarks relating to the accused's guilty plea and sentence to probation shown to have occurred in March and June 1978. Hence, the entry was not made in compliance with applicable regulations and lacks officiality. See paragraph 144b, MCM, *supra*; *U. S. v. Bowman*, 21 U.S.C.M.A. 48, 44 C.M.R. 102 (1971); *U. S. v. McNamara*, 7 U.S.C.M.A. 575, 23 C.M.R. 39 (1957); *U. S. v. Parlier*, 1 U.S.C.M.A. 433, 4 C.M.R. 25 (1952). The entry also fails to show that the offense under consideration by the United States District Court was committed subsequent to Seaman Recruit Baughman's enlistment in the Coast Guard so as to be admissible under the rationale of *U. S. v. Martin, supra*.

■ The copies of the purported United States District Court order do not qualify as "personnel records" of the accused, paragraph 75d, MCM and *U. S. v. Newbill* both *supra*; they also fail to show that the offense before the court was committed while the accused was a member of the Coast Guard, *U. S. v. Martin, supra*; and, they were not properly authenticated, paragraph 143b(2), MCM, 1969 (Rev.), also *U. S. v. Bryson*, 3 U.S.C.M.A. 329, 12 C.M.R. 85 (1953). We have concluded, therefore, that prosecution exhibit 8 was erroneously admitted in evidence and considered by the trial judge in his sentence deliberations. Having reached that conclusion, we must now determine to what extent the appellant may have been harmed by the error. *U. S. v. Montgomery*, 20 U.S.C.M.A. 35, 42 C.M.R. 227 (1970).

As indicated earlier Seaman Recruit Baughman testified at length in the case in chief with respect to his efforts to terminate his unauthorized absence about 14 September 1978. On cross-examination the trial counsel attempted to impeach the accused without objection as follows:

"Q. Have you ever been convicted of a crime in a civilian court?

A. Yes, I have.

Q. What crime were you convicted of?

A. A misdemeanor.

Q. What was the nature of the crime?

A. Theft of an object in the value of less than $100.00.

Q. Have you ever been convicted by a special court-martial?

A. Yes, I have.

Q. What was the nature of that?

A. Theft." (R–25, 26)

Although the connection is not explicitly drawn in the record of trial, it clearly appears that the conviction of theft in a civilian court admitted by the accused on cross-examination is the same conviction which the trial counsel endeavored to prove by prosecution exhibit 8 just as his admitted conviction of theft by a special court-martial certainly refers to the conviction evidenced by prosecution exhibit 9. While the accused did say that the offense was a misdemeanor he also said that it involved theft of an object having a value less than $100.00. Thus, it was a conviction of an offense involving moral turpitude as defined in paragraph 153b(2)(b)(4), MCM, 1969 (Rev.) and as such was a proper basis for impeachment. See also *U. S. v. Berthiaume*, 5 U.S.C.M.A. 669, 18 C.M.R. 293 (1955); *U. S. v. Shepherd*, 9 U.S.C.M.A. 90, 25 C.M.R. 352 (1958). Cf. *U. S. v. Johnson*, 1 M.J. 152 (C.M.A.1975); *U. S. v. O'Berry*, 3 M.J. 334 (C.M.A.1977). Having been properly placed before the military judge for the limited purpose of attacking the credibility of the accused before the findings, the judge was thereafter entitled to consider it in determining the kind and amount of punishment to be imposed without further proof. Paragraph 76a(2), MCM, 1969 (Rev.); *U. S. v. Worley*, 19 U.S.C.M.A. 444, 42 C.M.R. 46 (1970); *U. S. v. Mixson*, 5 M.J. 695 (A.C.M.R.1978), petition for review by U.S.C.M.A. denied 6 M.J. 125; *U. S. v. Floyd*, 3 M.J. 1034 (N.C.M.R.1977), petition for review by U.S.C.M.A. denied 4 M.J. 157.

As the information erroneously admitted as prosecution exhibit 8 was already properly before the military judge the accused was not harmed by the error. Nevertheless, we have reassessed the approved sentence on the basis of the entire record and find it to be entirely appropriate. See para-

graph 76a(4), MCM, 1969 (Rev.); *U. S. v. Riley*, 1 M.J. 639 (C.G.C.M.R.1975); *U. S. v. Rasmussen*, 4 M.J. 513 (C.G.C.M.R.1977); *U. S. v. Willis*, 7 M.J. 827 (C.G.C.M.R.1979).

■ We note that the district legal officer's review of the record would be prejudicially deficient under traditionally recognized standards for (1) failure to summarize the evidence bearing on the guilt or innocence of the accused, (2) failure to set forth the elements of the offense of unauthorized absence, (3) failure to advise the district commander with respect to the burden of proof, (4) failure to provide the district commander any guidance for resolving the issue of attempted termination of the absence, (5) failure of the district legal officer to state his opinion as to the adequacy and weight of the evidence, (6) failure to summarize the evidence presented by the defense with respect to the sentence, and, (7) failure to set forth reasons for his opinions and recommendations. See paragraph 85b, MCM, 1969 (Rev.); *U. S. v. Fields*, 9 U.S.C.M.A. 70, 25 C.M.R. 332 (1958); *U. S. v. Bennie*, 10 U.S.C.M.A. 159, 27 C.M.R. 233 (1959); *U. S. v. Clark*, 10 U.S.C.M.A. 614, 28 C.M.R. 180 (1959); *U. S. v. Donoho*, 46 C.M.R. 691 (A.C.M.R.1972) petition for review by U.S. C.M.A. denied 22 U.S.C.M.A. 645 (1973); *U. S. v. Barnes*, 3 M.J. 406 (C.M.A.1977) (concurring opinion). However, the trial defense counsel acknowledged receipt of a copy of the district legal officer's review more than ten days before the date of the district commander's action and he interposed no objection to its content or adequacy. Since this is the very type of error which the requirements of *U. S. v. Goode*, 1 M.J. 3 (C.M.A.1975) were intended to obviate on review, we consider the deficiencies in the district legal officer's review to have been waived. *U. S. v. Barnes, supra*; *U. S. v. Cook*, 7 M.J. 860 (A.C.M.R.1979).

■ In their actions on the record both the convening authority and the officer exercising general court-martial jurisdiction ordered execution of the sentence which includes an unsuspended bad conduct discharge. The order of execution in each instance was invalid and of no effect. Article 71(c), UCMJ; *U. S. v. Sutton*, 39 C.M.R. 884 (C.G.B.R.1968).

The findings of guilty and the sentence are affirmed.

Judges HOLLAND and BRIDGMAN concur.

Judge ALCANTARA did not participate in the decision in this case.